UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BURTON W. WIAND, as Receiver for
VALHALLA INVESTMENT PARTNERS,
L.P.; VIKING FUND, LLC; VIKING IRA
FUND, LLC; VICTORY FUND, LTD.;
VICTORY IRA FUND, LTD., AND
SCOOP REAL ESTATE, L.P.,

     Plaintiff,

v.           Case No. 8:10-CV-181-T-17MAP

ROBERTA SCHNEIDERMAN and ROBERT D.
ZIMELIS, as co-executors of the Estate of
Herbert Schneiderman,

     Defendant.
_____/

## **REPORT AND RECOMMENDATION**

   After losing at arbitration, the Receiver seeks to vacate the arbitrator's award on three

grounds:  (1) the arbitrator refused to hear pertinent and material evidence, (2) the arbitrator

exceeded his powers and imperfectly executed them by failing to consider any evidence or issue

a reasoned award; and (3) there was never a valid, enforceable arbitration agreement between the

parties, and the arbitrator thus exceeded his powers by rendering the award.  After consideration,

I recommend the motion to vacate be DENIED for the reasons set forth below.

   *A.  Background*

   This case emanates from a Securities and Exchange Commission enforcement action

aimed at dealing with the aftermath of a massive Ponzi scheme perpetrated by a hedge fund

manager, Arthur Nadel.  *See SEC v. Arthur Nadel, et al.,* Case No. 8:09-cv-87-T-26TBM.   The Receiver, Burton W. Wiand ("Receiver"), sued numerous hedge fund investors, including Roberta Schneiderman and Robert D. Zimelis, jointly and severally, as co-executors of the estate of Herbert Schneiderman ("Defendants"), seeking to claw back "false profits" under two theories grounded on the same illegal scheme the indictment tracks: avoidance of fraudulent transfers under Florida's Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.101, *et seq.* ("FUFTA"), and unjust enrichment.[1]  In the Complaint, the Receiver alleges that the Defendants experienced false profits by receiving a distribution in the amount of $263,660.48, a figure exceeding Mr. Schneiderman's principal investment by $163,660.48.  *See* doc. 1, Ex. A.  The district judge granted the Defendants' motion to compel arbitration, the parties proceeded to arbitration before the American Arbitration Association Commercial Arbitration Tribunal, and  arbitrator Steven M. Platau entered a Final Order and Award (hereinafter "the Award").   In the Award, the arbitrator denied the Receiver's motion for declaratory judgment that the purported agreements containing arbitration clauses are void and dismissed the Receiver's claims, finding them barred by the Florida Probate statutes.  *See* Award, doc. 62-1.  At this juncture, the Receiver filed a motion seeking to vacate the Award (doc. 61), and the district judge has referred the motion to me.

### B.  Standard of review

Arbitration awards are presumed correct, and the burden rests with the party requesting

---

[1]  These types of cases are often called "clawback" actions.

vacatur to rebut this presumption by asserting sufficient grounds to vacate. *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1223 (11th Cir. 2000). The Federal Arbitration Act ("FAA") sets forth four exclusive statutory bases for vacating an award: 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or corruption in the arbitrators, or either of them; 3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or 4) where the arbitrator exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. §10(a)(1)-(4). In §10(a), Congress instructed that a court "may make an order vacating the award" for these enumerated reasons, as opposed to "must" or "shall," further emphasizing the deferential nature of a Court's review. *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 n.11 (11th Cir. 2011). "There is a presumption under the FAA that arbitration awards will be confirmed, and federal courts should defer to an arbitrator's decision whenever possible." *White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.,* 660 F.3d 1277, 1281 (11th Cir. 2011).

The Eleventh Circuit has explained that "arbitration proceedings 'need not follow all of the niceties of the federal courts; [they] need provide only a fundamentally fair hearing.'" *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmgH*, 141 F.3d 1434, 1443 (11th Cir. 1998). And, arbitrators enjoy wide latitude in conducting an arbitration hearing, and are not constrained by formal rules of procedure or evidence. *Robbins v. Day*, 954 F.2d 679, 685 (11th Cir 1992)

3

overruled on other grounds, *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 948 (1995).

By agreeing to arbitrate, a party trades the procedures and opportunity for review of the

courtroom for the simplicity, informality, and expedition of arbitration.   *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).  The arbitrator has greater flexibility and

the courts should not review the legal adequacy of his evidentiary rulings.  *Amalgamated Meat*

*Cutters & Butcher Workmen v. Neuhoff Bros.,* 481 F.2d 817 (5th Cir. 1973).[2]

    *C.  Discussion*

        *1.  the arbitration proceedings*

    The Receiver filed a "Statement of Claim" initiating the arbitration before the American

Arbitration Association ("AAA") against Roberta Schneiderman and Robert D. Zimelis, as co-

executors of the estate of Herbert Schneiderman and also against Roberta Schneiderman,

individually (collectively, "Respondents").[3]   *See* doc. 68-2.   The Respondents raised the

threshold defense that the Receiver's claims were barred by the Florida Probate Code, codified

at Fla. Stat. Ch. 733 *et seq.*  The arbitrator conducted a telephonic preliminary hearing on January

---

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the
Eleventh Circuit  adopted as precedent the decisions the former Fifth Circuit rendered prior to
October 1, 1981.

[3]  The terms, "Respondents" and "Defendants," cannot be used interchangeably here because
the Receiver's statement of claim filed in the arbitration proceeding sought damages from
Roberta Schneiderman individually *and* in her representative capacity as a co-executor of her
husband's estate.  In contrast, the Receiver's clawback complaint named Mrs. Schneiderman
only in her representative capacity.  *Compare* doc. 1 with doc. 68-2.  Whether that distinction
is material, particularly for Mrs. Schneiderman, is a question that I need not decide.
Nonetheless, for accuracy's sake, I use the term, "Respondents," to identify those parties
whom the Receiver proceeded against in the arbitration proceedings.

4

15, 2013.   Both the Receiver and the Respondents advised the arbitrator of "threshold" dispositive issues, and requested summary disposition of same.   While the AAA Commercial Arbitration Rules do not specifically provide for motions for summary disposition, they do grant the arbitrator flexibility and discretion.   The Eleventh Circuit has held that the FAA permits arbitration to proceed "with only a summary hearing and with restricted inquiry into factual issues .... [The arbitrator] need only give each party the opportunity to present its arguments and evidence."   *Scott v. Prudential Securities, Inc.,* 141 F.3d 1007, 1017 (11th Cir. 1998).   The Victory arbitration clauses do not proscribe this procedure.

Thereafter, the arbitrator issued a Preliminary Hearing Record & Scheduling Order indicating that "[the parties agree that a threshold issue raised is whether this matter is properly in arbitration" and "[t]he parties agreed that, should the matter be ruled properly in arbitration, the next potentially dispositive issue is the time of the action and the statute of repose."   *See* Preliminary Hearing Record & Scheduling Order, doc 68-3.   This Order set forth  deadlines for the filing of briefs in support of and in opposition to the issues of arbitrability and the applicability of the statute as well as final response briefs.   *See* doc. 68-3 at p.2.   The Order specifically directed each party to read it and submit any corrections or amplifications promptly to the case administrator.   *See* doc. 68-3, at p.3.   The Receiver submitted a twenty page brief in opposition to the Respondent's motion to dismiss or, alternatively, summary judgment on the issue of whether the Florida Probate Statutes barred the Receiver's claims against Respondents.   *See* doc. 62-3.   There is no indication that the Receiver submitted any proposed corrections or amplifications, nor otherwise objected to the arbitrator's plan of action to summarily address the

5

issues of arbitrability and the statute.  The arbitrator's Award indicates that the parties mutually agreed to short extensions of filings and after the filings, the arbitrator heard oral arguments on April 2, 2013.  The arbitrator issued his Award on May 3, 2013.  *See* doc. 62-1.  In the Award, the arbitrator addressed the Respondents' Motion for Dismissal, or Alternatively, Summary Judgment, concluding that:

> Respondents correctly assert that the Receiver's claim against Respondents arose out of payments made to the estate of Mr. Schneiderman.  Respondents correctly assert that Florida Statutes Chapter 733 presents an absolute bar against any claims filed more than 2 years after the date of death of decedent (Schneiderman).  Mr. Schneiderman died October 20, 2007.  Respondents correctly assert that Florida Statutes Chapter 733 presents an absolute bar to any claims filed after October 21, 2009.  Claimant Receiver filed its claim against Respondents in January, 2010.  Respondent's Motion for Summary Judgment is granted.  Claimant Receiver's claim is time barred.

*See* Award, doc. 62-1.  Upon receipt of the Award, the Receiver filed a motion for rehearing and reconsideration, asserting that the arbitrator's Award was "plainly" wrong because the key issue is not the factual question of when the transfer the Receiver seeks to recover occurred but the legal question of whether the Receiver's fraudulent transfer and unjust enrichment claims constitute a claim or cause of action against Mr. Schneiderman.  *See* doc. 62-4.  Rule 4-6 of the AAA provides that "The arbitrator is not empowered to redetermine the merits of any claims already decided."  The arbitrator denied the Receiver's motion.  *See* doc. 62-5.

### 2.  *the Receiver's arguments for vacatur*

The Receiver seeks vacatur of the Award under §10(a)(3), asserting the arbitrator refused "to hear evidence pertinent and material to the controversy" and under §10(a)(4) asserting the arbitrator exceeded his powers when he summarily concluded the Receiver's claims against

Respondents were barred by the Florida Probate Statutes.  The Receiver also asserts there was never a valid, enforceable arbitration agreement between the parties, and the arbitrator thus exceeded his powers by rendering the Award.  I will address each of these contentions below.

### a. refusal to hear material evidence

A district court may vacate an arbitration award "where the arbitrators ... refus[ed] to hear evidence pertinent and material to the controversy."  §10(a)(3).  In this case, the Receiver asserts that Respondents based their motion for dismissal, or alternatively, summary judgment on "unsubstantiated allegations," and that by granting the motion, the arbitrator refused to hear pertinent and material evidence relating to the existence and value (or lack thereof) of Mr. Schneiderman's purported Capital Account.  In the main, the Receiver posits that the Florida Probate statutes do not bar the Receiver's fraudulent transfer and unjust enrichment claims against the Respondents since these claims do not constitute a cause of action or claim against the decedent, Herbert Schneiderman, and thus, do not trigger the Florida Probate statutes.

The Receiver maintains that the arbitrator based the Award on the disputed premise that Mr. Schneiderman invested in the Victory hedge fund during his lifetime, and that Schneiderman's Victory account actually existed and actually contained profits.  The Receiver claims the arbitrator failed to address the Receiver's contrary position that Mr. Schneiderman's purported Victory account was a sham as Victory was one of the hedge funds operated by Nadel to perpetrate his Ponzi scheme.  The Receiver asserts that the arbitrator erred by failing to consider such evidence or alternatively, failing to recognize the parties' dispute regarding the existence of Mr. Schneiderman's capital account.  In support of its motion to vacate the Award,

7

the Receiver filed a declaration of its counsel, Gianlucca Morello, who states that to the extent that the "Arbitrator determined the purported creation of or allocation of 'profits' to any such account before Mr. Schneiderman's death was sufficient to bring the Receiver's fraudulent transfer claims against the Respondents within the ambit of the Probate Statutes, the Receiver would produce evidence at a final hearing showing that no such account actually existed, and even assuming it did, there were no actual profits to allocate to any such account during Mr. Schneiderman's lifetime." *See* doc. 61, p.11 citing Morello Decl. ¶6.

Clearly the Receiver disagrees with the arbitrator's Award; however, what is missing from his argument are any assertions that the arbitrator "refus[ed] to hear evidence pertinent and material to the controversy" justifying vacatur under §10(a)(3). The arbitrator established an extensive briefing schedule, extended the time for filings, conducted oral argument, and considered the evidence submissions before entering his Award. All this supports the conclusion that the Receiver had ample opportunity to submit evidence; indeed, the Receiver has made no showing that the arbitrator refused to hear any evidence. In fact, even the Receiver's motion for rehearing fails to indicate that the arbitrator refused to hear pertinent and material evidence. Accordingly, I find the Receiver has failed to show grounds for vacatur under §10(a)(3). And, I find the Receiver's assertions that the arbitrator's Award ignores applicable principles of FUFTA and misapplies the Florida Statutes without merit. The Eleventh Circuit rejected a similar argument in *Scott v. Prudential Securities, Inc.,* 141 F.3d 1007, 1014 (11th Cir. 1998), stating it would not address Scott's contentions that the arbitrators' award ignored applicable principles of corporate law or Florida's statute of frauds as such contentions were not legally

cognizable attacks on the arbitration award. *Scott,* 141 F.3d at 1014 n.14 (denying motion to vacate arbitration award where "overwhelming thrust of [Scott's] argument is that the arbitrators misapplied the law to his case" ... finding "[i]t is well settled law ... "that courts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation."). *See also Great American Ins. Co. v. Moye*, 733 F.Supp.2d 1298, 1303 (M.D. Fla. 2010) ("This Court will not sit as the arbitrator to re-evaluate the merits or make factual determinations" ... and will not "overturn the Arbitrator's decision because a party disagrees with his conclusions, even if the Arbitrator's conclusions are 'silly,' or if he made 'serious' or 'improvident' errors.").[4]

### b. the arbitrator exceeded his powers

Pursuant to 9 U.S.C. §10(a)(4), a court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."   Courts read this section narrowly, applying it to instances where the arbitrators decided an issue the parties had not submitted to arbitration, or where the arbitrators granted relief not authorized in the arbitration agreement. *Morgan Stanley & Co., LLC v. Core Fund, Int'l Corp.,* 884 F.Supp. 2d 1229, 1231 (M.D. Fla. 2012).   This policy in keeping the goals of the FAA – arbitration is a creature of

---

[4] Moreover, where the parties fail to present any transcript of the arbitration proceedings, the Court's ability to conduct a meaningful review of the challenged rulings of the arbitrator is impeded.  *See World Business Paradise, Inc. v. SunTrust Bank,* 403 Fed.Appx. 468 (11th Cir. 2010) (citing *University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 131, 1337 (11th Cir. 2002)) (denying motion to vacate arbitration award in part because, absent hearing transcript, courts "cannot ascertain from the bare-bones statement of the award what principle of law the arbitrators purportedly chose to ignore").

contract and the arbitrators derive their powers from the parties' agreement to arbitrate. *Cat Charter, supra,* 646 F.3d at 843 *citing Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989).

The Receiver attempts to fit into § 10(a)(4)'s small window.  He asserts that the parties' arbitration agreement required the arbitrator to provide a "reasoned" award; because the award was not reasoned (so the Receiver posits), this Court's review of that award is appropriate (so the Receiver reasons).   Put more succinctly, what the Receiver is really saying is that a "reasoned" award must always equate to a "correct" award.  Such a view would make every arbitration award available for judicial review as every arbitration loser could always argue the award was not reasoned because the arbitrator incorrectly decided the matter.  That approach deviates from the favorable view afforded to arbitration.  As the Supreme Court recently explained, "… §10(a)(4) … permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly."  *Oxford Health Plans, LLC v. Sutter,* 133 S.Ct. 2064 (June 10, 2013).  *See also DirectTV, LLC v. Arndt,* 2013 WL 5718384 (Oct. 22, 2013) (quoting *Sutter*) (reversing district court's order vacating award as "arbitrator's construction holds, however good, bad, or ugly").

The Eleventh Circuit has already deciphered what constitutes a "reasoned award." Noting that the phrase "reasoned award" is a somewhat ambiguous term left undefined by the FAA, the arbitration rules, and the parties' contract, the *Cat Charter* court relied on common sense and scarce precedent to illuminate the critical term.  *Cat Charter, supra,* 646 F.3d at 843-844.  The court indicated that ordinarily, in a typical arbitration where no specific form of award

is requested, the arbitrators may provide a "standard award" and simply announce a result.  *Id.*

(citing *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960)).   Other

arbitration agreements may request that the arbitrator make "findings of fact and conclusions of

law."  *Id.*  The *Cat Charter* court concluded that a "reasoned award" was "something short of

findings and conclusions but more than a simple result."  *Id.* (quoting *Sarofim v. Trust Co. of the*

*West,* 440 F.3d 213, 215 n.1 (5th Cir. 2006)).    Noting that further guidance was need to

sufficiently define the term "reasoned," the court stated:

> ... Webster's defines "reasoned" as "based on or marked by reasoning," and
> "provided with or marked by the detailed listing or mention of reasons."
> Webster's Third New Int'l Dictionary: Unabridged 1892 (1993).  Relatedly,
> "reason" – as used in this context– is defined as "an expression or statement
> offered as an explanation of a belief or assertion or as a justification of an act or
> procedure." *Id.* at 1891.  Strictly speaking, then, a "reasoned" award is an award
> that is provided with or marked by the detailed listing or mention of expressions
> or statements offered as a justification of an act- the "act" here being, of course,
> the decision of the Panel.

*Cat Charter,* 646 F.3d at 844.  The *Cat Charter* court found the arbitrator's statement that "[o]n

the claim of the Claimants ... for breach of contract ... we find that Claimant ... has proven its

claim against MTI by the greater weight of the evidence" was "easily understood to mean that,

in the swearing match between the Plaintiffs and the Defendants, the Panel found the Plaintiffs'

witnesses to be more credible."  The court opined that the arbitrator's statement was not devoid

of any statements offered as a justification and that the arbitrator plainly provided a  reason for

Plaintiffs' victory. *Id.* at 845.  I, too, find that the arbitrator in this case offered more detailed

support than what is required in a "standard award," and plainly provided a reason for granting

Respondents' motion and finding the Receiver's claim time-barred.  As the Defendants point out,

11

the arbitrator's Award describes the timing of the payments to Mr. Schneiderman's estate sets forth his reasons for finding the Receiver's claim barred by the two-year probate nonclaim statute. The Award provides ample justification for the arbitrator's decision, and was a reasoned one.[5]

To the Receiver's misplaced assertions that the arbitrator exceeded his authority by ignoring the parties' arguments and effectively granting summary judgment for the Respondents based on no evidence whatsoever, I find these contentions amount to no more than arguments that the arbitrator's Award was arbitrary and capricious or in manifest disregard of the law. Though some circuits recognize non-statutory grounds for vacatur, this circuit does not. *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313 (11th Cir. 2010) ("we hold that our judicially-created grounds for vacatur are no longer valid...").[6] Couching an argument that the arbitrator exceeded

---

[5]  As in *Cat Charter,* I find that this conclusion is consistent with the general review principles embodied in the FAA.  The Supreme Court has read §§9-1 of the FAA

 as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway.  Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in post-arbitration process.

*Cat Charter, supra,* at 845 (quoting *Hall Street Assocs., LLC v. Mattel, Inc.,* 552 U.S. 576, 588 (2008)).

[6]  In *Frazier*, the Eleventh Circuit held that three previously recognized non-statutory grounds for vacatur, that he arbitration decision was arbitrary and capricious, violated public policy, or evidenced a manifest disregard for the law, are no longer viable, in light of the Supreme Court's decision in *Hall Street Assoc., LLC v. Mattel, Inc.,* 552 U.S. 576 (2008).  *Frazier,* 610 F.3d at 1321-24.  And, more recently, the Eleventh Circuit indicated that "in our circuit, we recognize neither an 'incorrect legal conclusion,' nor a 'manifest disregard of the law,' as grounds for vacating or modifying an award, we are left, under §10(a)(4), with a single

12

his powers by acting contrary to the law and failing to find in Receiver's favor, essentially asks this Court to do what it is not authorized to do – look to the legal merits of the underlying Award. *See White Springs Agricultural Chemicals, Inc. v. Glawson Inv. Corp.,* 660 F.3d 1277, 1282 (11th Cir. 2011) ("Even though White Springs presents its argument [that the arbitrators exceeded their powers by acting contrary to the law] in terms of the FAA, it asks us to do what we may not – look to the legal merits of the underlying award."). Arbitrators "do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." *Cat Charter*, 646 F.3d at 843.

### c.  prior ruling on arbitrability

The Receiver re-asserts that the Award should be vacated because no contract with an arbitration clause existed.  Specifically, the Receiver argues that no contract existed because there was no mutual assent, the fund managers lacked authority to execute the scheme offering documents, and because there was no contract with an arbitration clause since the creation of the hedge funds and the purported execution of the scheme offering documents were *ultra virus.* The Receiver further argues that even assuming the contracts reflected in the scheme offering documents came into existence, the Award should be vacated because the scheme offering documents are unenforceable and *void ab initio* because they are illegal and against public policy.  Encompassed within this broad argument are the assertions that contracts created to

---

question: did the arbitrator 'exceed [his] powers, or so imperfectly execute[ ] them that a mutual, final, and definite award upon the subject matter submitted was not made?" *Southern Comm. Serv., Inc. v. Thomas,* 720 F.3d 1352, 1360 (11th Cir. 2013) (citations omitted).

perpetuate Ponzi schemes, like the scheme offering documents, are unenforceable, that there was no agreement to arbitrate because the scheme offering documents are *void ab initio* under Florida law, and that even assuming that a valid agreement to arbitrate exists, arbitration was not warranted because it conflicted with the purpose of 28 U.S.C. §§754 and 1692.

The Receiver acknowledges that this Court already rejected the above arguments and determined that the contracts reflected in the scheme offering documents came into existence (while reserving the question of the contracts' validity for arbitration). However, the Receiver reasserts the arguments "to preserve them for appeal," (doc. 61, p.16) and incorporates by reference his full arguments contained in his briefs in opposition to the defendants' motion to compel arbitration (docs. 25, 35) with respect to these issues. Because this Court has already rejected the Receiver's arguments (*see* Report and Recommendation, doc. 42, and Order adopting it, doc. 47), it is unnecessary for me to discuss them again now. After the district judge granted the Defendants' motion to compel arbitration and directed the parties to proceed to arbitration, the Receiver filed a motion before the arbitrators seeking a declaratory judgment that the purported agreements containing arbitration clauses are void *ab initio*.[7] The arbitrator heard

---

[7] The Order provided:
> ... the Eleventh Circuit has twice rejected the argument that a contract is "void ab initio" due to its illegality. *See Jenkins v. First Am. Cash Advance of Ga., LLC,* 400 F.3d 868, 881 (11th Cir. 2005) (rejecting that "void ab initio allegation[s]" are like "the contentions in *Chastain* that a contract ever existed."); *Bess v. Check Express,* 294 F.3d 1298 (11th Cir. 2002) (noting that *Chastain* involved the allegation that a contract never existed at all because the plaintiff never signed and assented to the contracts in question.) Furthermore, "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken."

oral arguments regarding this motion, and in the Award, concluded that "the matter is properly in arbitration." (Award, doc. 62-1, p.2)  In reaching this conclusion, the arbitrator stated that "an arbitration clause shall be treated as an agreement independent of other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause." (Award, doc. 62-1, p.1 quoting *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440 (2006))    To the extent that the Receiver labels his complaints about the validity of the arbitration clause as a §10(a)(4) violation, I find that the arbitrator did not exceed his powers.  *See Sutter, supra.*

  *D.  Conclusion*

  In order to prove that the arbitrator exceeded his power, the Receiver "must clear a high hurdle" because "[i]t is not enough" to show that the arbitrator "committed an error – or even a serious error."  *Stolt-Nielsen v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010).  As set forth herein, this Court must give "considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances."  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995).  After consideration, I find that the Receiver has failed to prove any grounds justifying vacatur of the arbitration award.  Accordingly, after consideration, it is hereby

  RECOMMENDED:

---

  *Preston v. Ferrer*, 552 U.S. 346, 353 (2008).  As the Receiver's challenges go to the legal formation of the agreements, they are for the arbitrators to consider.  *Id.* at 354 (citations omitted).
Order, doc. 47; 2011 WL 4530203, *10 (M.D. Fla. Sept. 29, 2011).

1.   The Receiver's motion to lift stay and to vacate arbitration award (doc. 61) be

DENIED.

REPORTED at Tampa, Florida on January 10, 2014.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).